IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jennifer Bufford, ) | C/A No. 0:09-3316-RMG-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 DSC et seq. The plaintiff, Jennifer Bufford ("Bufford"), brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying her claims for Disability Insurance Benefits ("DIB").

**ADMINISTRATIVE PROCEEDINGS**

In February 2007, Bufford applied for DIB. Bufford's application was denied initially and on reconsideration and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on April 16, 2009 at which Bufford appeared and testified and was represented by Tom J. Irvin, Esquire. After hearing testimony from a vocational expert, the ALJ issued a decision dated June 30, 2009 finding that Bufford was not disabled through her date last insured, June 30, 2007. (Tr. 9-18.)

Bufford was born in 1965 and was forty-two years old as of her date last insured. (Tr. 16, 82.) She has a college education and past relevant work experience as an actuary. (Tr. 105, 112.)

Bufford alleges disability since March 2, 2005 due to nerve problems in her hands and neck, multiple surgeries, and pain and numbness. (Tr. 82, 104.)

The ALJ made the following findings and conclusions:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2007.

2. The claimant did not engaged in substantial gainful activity during the period from her alleged onset date of March 2, 2005 through her date last insured of June 30, 2007 (20 CFR 404.1571 *et seq.*).

\* \* \*

3. Through the date last insured, the claimant had the following severe impairments: obstructive sleep apnea; obesity; status post cervical laminectomy with hardware, 2006; status post multiple carpal tunnel surgeries; anxiety; depression[]; status post arthroscopy, left knee, 2004. (20 CFR 404.1520(c)).

\* \* \*

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with limitations. The claimant can lift/carry 10 pounds occasionally, sit for up to 6 hours, and stand/walk for up to 2 hours. The claimant is limited to frequent handling and fingering. Due to psychologically based symptoms and side effects of medication, the claimant is limited to the concentration and persistence requirement for unskilled work.

\* \* \*

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

\* \* \*

7. The claimant was born on [REDACTED], 1965 and was 42 years old, which is defined as a younger individual age 18-44, on the date last insured. (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a



>   finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).
>
> \* \* \*
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 2, 2005, the alleged onset date through June 30, 2007, the date last insured (20 CFR 404.1520(g)).

(Tr. 11-17.)

Bufford filed a request for Appeals Council review with additional argument in support of her claim. On October 30, 2009, the Appeals Council denied Bufford's request for review, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) Bufford filed this action on December 23, 2009.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

>   (1)   whether the claimant is engaged in substantial gainful activity;
>
>   (2)   whether the claimant has a "severe" impairment;
>
>   (3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;



(4) whether the claimant can perform [her] past relevant work; and

(5) whether the claimant's impairments prevent [her] from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4). If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more

than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589.  In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence.  Blalock, 483 F.2d at 775.

## ISSUES

In this matter, Bufford alleges that the ALJ erred in evaluating Bufford's credibility regarding her subjective complaints and argues that the ALJ's residual functional capacity ("RFC") determination is not supported by substantial evidence for numerous reasons.  (Pl.'s Br., ECF No. 9.)

## DISCUSSION

**A.     Subjective Complaints**

In evaluating subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996).  In this matter only the second step is at issue,[1] during which the ALJ must expressly consider "the intensity and persistence of the claimant's pain [or other symptoms] and the extent to which it affects her ability to work." Id.  In making this determination, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the

---

[1] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



individual's statements and the reasons for that weight." SSR 96-7p. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id. (emphasis added). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. Further, "[i]n analyzing a claimant's subjective complaints, such as pain, an ALJ must consider: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984)).

During the hearing, Bufford testified that she stopped working full-time as an actuary in 1999 because her daughter was born at the end of 1999 and her employer was "going through major cutbacks and layoffs." (Tr. 25.) Bufford testified that she was struggling with her hands prior to her alleged onset date and that her onset date is based on the date that she planned to return to work after having her children. (Tr. 25-26.) Bufford stated that she has had multiple carpal tunnel surgeries; however, she does not "have any feeling in my fingertips, my hands go numb and hurt, and I don't have good control of using my hands, especially for small tasks, but even for doing simple things like typing on the computer I lose where the keys are." (Tr. 26.) In discussing her sleep apnea, Bufford stated that she does not get a restful night's sleep, experiences chronic fatigue, and takes



several rest breaks during the day. (Tr. 27.) Bufford testified to chronic pain in her neck and shoulder and stated that there is also some pain in her lower back, her fingers, and her left knee. (Tr. 38, 30.) Bufford affirmed that the pain was mentally distracting. (Tr. 28.) As a result of these alleged impairments, Bufford stated that she has suffered from depression and anxiety, which include crying spells and withdrawal from her family and friends. (Tr. 28-29.)

With regard to her daily activities, Bufford reported at the April 16, 2009 hearing that she could stand for about 10 or 15 minutes without leaning on anything; that she could sit for 15 to 20 minutes without having to fidget or move around; that she is restricted to lifting less than 5 pounds; and that she has problems bending and squatting. (Tr. 30-31.) Bufford stated that she requires help with her children. (Tr. 31.) She also testified that she takes them to school, but not very often. (Tr. 32.) She also reported that she no longer engages in certain hobbies, such as cross stitching, making jewelry, or assembling model ships. (Tr. 32.) Bufford stated that she did not do laundry, dust, mop, sweep, wash dishes, or do any yard work, but she did testify that she performed grocery shopping with assistance when necessary and did very limited meal preparation. (Tr. 33.)

In this case, the ALJ found that Bufford's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 15.) In reaching this conclusion, the ALJ expressly considered several factors in discounting the credibility of Bufford's subjective complaints. For example, the ALJ observed that through Bufford's date last insured, she "continued to perform a wide range of activities," such as "caring for her children, driving, light household chores, simple cooking, shopping, handling money and accounts, and keeping in touch with friends by phone, email and in person." (Tr. 15.) Bufford indicated her ability to perform these activities in a February 16, 2007 function report she completed. (See Tr. 114-21.) The ALJ found that these activities were



consistent with a finding of the ability to work, as they "involve a good many work-like tasks." (Tr. 15.) The ALJ further found that the location, duration, frequency, and intensity of her symptoms were insufficiently severe to support a finding of disability through her date last insured. (Id.)

In support of her position that the ALJ erred in discounting her credibility, Bufford argues that the ALJ's credibility finding did not comply with the requirements of Social Security Ruling ("SSR") 96-7p. Specifically, Bufford first contends that her testimony was consistent with the opinion of her treating physician, Dr. W. Clark Jernigan. (See Pl.'s Br. at 5, ECF No. 9 at 5.) Bufford relies on a statement by Dr. Jernigan indicating that Bufford had decreased sensation and an opinion that she would "find tasks difficult that involve fine motor control or repetitive gripping with the hands." (See Tr. 334, 428.) Further, in her reply brief, Bufford argues that while the ALJ acknowledged Dr. Jernigan's opinion, she failed to explain why, in making Bufford's residual functional capacity ("RFC") determination, she limited Bufford to performing *frequent* handling and fingering rather than *occasional* handling and fingering.

As an initial matter, the court observes that Dr. Jernigan's December 20, 2006 opinion states that with regard to Bufford's carpal tunnel syndrome, "she has *no limitations on work*; however, she will find tasks difficult that involve fine motor control or repetitive gripping with the hands." (Tr. 334) (emphasis added). Further, on February 16, 2005, two weeks prior to her alleged onset date, Dr. Jernigan stated that Bufford had a powerful grip strength and could use her hand without restriction. (Tr. 320.) Accordingly, the court finds that Bufford has failed to demonstrate that the ALJ's finding that she is limited to frequent handling and fingering was inconsistent with Dr. Jernigan's conclusions and therefore does not provide a basis to render the credibility analysis unsupported by substantial evidence.

Bufford next argues that her testimony is supported by the function report, in which she indicated that she could only use her hands for five to ten minutes at a time; that she has difficulty performing basic tasks with her hands—such as buttoning clothing, squeezing a shampoo bottle, picking up coins, and cutting meat; and that house and yard work takes three to four times longer due to problems with her hands. (See Pl.'s Br. at 5, ECF No. 9 at 5) (citing Tr. 115-16, 118.) However, the record viewed as a whole supports the ALJ's findings pertaining to Bufford's daily activities, and Bufford's argument that she indicated difficulty performing selective other tasks in this report does not render the ALJ's decision unsupported. For example, while Bufford testified in 2009 to more restrictive activities of daily living, Bufford indicated in the February 16, 2007 function report her ability to perform the activities listed by the ALJ, which included "caring for her children, driving, light household chores, simple cooking, shopping, handling money and accounts, and keeping in touch with friends by phone, email and in person." (Tr. 15; see also Tr. 114-21.) These activities were consistent with those listed in an August 2007 function report completed by her husband. (See Tr. 148-55.) In her reply brief, Bufford also contends that the evidence does not support a conclusion that she could engage in these activities on a sustained basis, such that she would be able to work eight hours per day, five days per week. However, her treating or examining physicians had not placed any restrictions or functional limitations on her prior to her date last insured. (See, e.g. Tr. 316, 317, 320, 321, 331, 332, 334, 380, 404-05, 593.)

Finally, Bufford asserts that the ALJ substituted her assessment of Bufford's fingering and handling abilities, rather than those demonstrated by the record.[2] For example, Bufford argues that the function report her husband completed, which was credited by the ALJ, supports her limitations based on his indications that Bufford's attention span and ability to complete tasks is reduced due to her medications and surgeries and that she cannot handle stress. (Id. at 6) (citing Tr. 153-54). Bufford also relies on the opinion of Dr. C. David Tollison, a treating medical source, who found Bufford had marked limitations in activities of daily living, social functioning, and concentration, persistence and pace. (Id.) (citing Tr. 541-51). A review of Bufford's RFC reveals that the ALJ limited Bufford's concentration and persistence requirement to that of unskilled work due to her psychologically based symptoms and the side effects of her medications. Further, the ALJ gave Dr. Tollison's 2009 statement little weight. Although Dr. Tollison indicated that he believed the above described limitations existed when he first saw her in August 2007 and probably from whenever she last worked full time, the ALJ found that

> prior to the date last insured [June 2007], there is only a prescription for antidepressant and no diagnosis of record. Nor was the claimant in counseling. There is no supporting medical evidence of record showing the claimant had disabling mental impairments prior to her date last insured. The Administrative Law Judge notes that Dr. Tollison's contemporaneous notes from August 2007 to March 2009, offer little to support a claim of marked limitations in functioning.

(Tr. 15.) To the extent that Bufford's argument is based on an allegation that the ALJ erred in giving this opinion little weight, the court finds that this argument is conclusory and is without merit.

---

[2] Based on the examples that follow, Bufford actually appears to be arguing that the ALJ erred in failing to fully credit her testimony regarding her mental limitations. To the extent that Bufford argues that the ALJ erred in partially rejecting Bufford's credibility with regard to her handling and fingering limitations, for the reasons discussed above, the court finds this argument to be without merit.



Upon a thorough review of the record as a whole, the court finds that the ALJ conducted a proper analysis in determining the credibility of Bufford's subjective complaints. See Craig, 76 F.3d at 595; Gowell, 242 F.3d at 796. While Bufford may point to selective medical evidence in the record in support of her argument, such evidence does not render the ALJ's decision unsupported. In determining that Bufford's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible, the ALJ considered Bufford's subjective complaints in conjunction with her abilities to perform daily activities and the medical evidence. Accordingly, Bufford has failed to demonstrate that the ALJ erred in finding that Bufford's subjective complaints are inconsistent with the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"). Moreover, the court may not substitute its judgment for the ALJ's. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Based on the record as a whole, the court cannot say that the ALJ's determination as to Bufford's credibility is not supported by substantial evidence.

**B.    RFC**

Bufford also argues that the ALJ's RFC determination is not supported by substantial evidence. The majority of this issue appears to be based upon the errors alleged above. Therefore, for the reasons discussed above, the court finds these arguments to be without merit.

Additionally, Bufford contends that the ALJ failed to explain how Bufford's RFC is affected by her obesity, her chronic fatigue due to sleep apnea, her testimony that she could only stand for ten



to fifteen minutes without support, and her assertion that she had to take three rest breaks during the day for a total of five to six hours. With regard to Bufford's testimony, as stated above, Bufford has failed to demonstrate that the ALJ erred in assessing Bufford's credibility. Moreover, Bufford's testimony in 2009 revealed more restrictive allegations than in 2007. Further, as stated above, other than Bufford's subjective complaints, her treating or examining physicians have not placed any restrictions or functional limitations on her prior to her date last insured. (See, e.g. Tr. 316, 317, 320, 321, 331, 332, 334, 380, 404-05, 593); see also Lee v. Sullivan, 945 F.2d 687, 693 (4th Cir. 1991) (affirming the ALJ's holding that the claimant was not disabled in part because none of the claimant's doctors opined that the claimant was disabled).

With regard to Bufford's allegations concerning obesity and sleep apnea, the ALJ specifically considered these impairments and found them to be severe impairments. Further, the ALJ expressly considered Bufford's obesity in determining her RFC and observed that Bufford reported good results from the use of a CPAP machine. (See Tr. 12, 339-40.) The record does not reveal any further treatment or complaints due to her sleep apnea. Additionally, other than speculating that she would need more frequent breaks, Bufford has failed to provide any additional or increased limitations supported by the record that would result from these impairments. See, e.g., Nelson v. Astrue, C/a No. 0:07-3114-HFF-PJG, 2009 WL 742724, at *4-5 (D.S.C. Mar. 19, 2009) (unpublished) (finding that reversal is not warranted where a claimant fails to put forth evidence regarding how obesity exacerbated his other conditions as the agency will not speculate about its impact) (remanding on other grounds); Gassaway v. Astrue, C/A No. 8:07-4083-HFF-BHH, 2009 WL 462704, at *10 (D.S.C. Feb. 23, 2009) (finding no error in the ALJ's assessment of the effect of obesity in combination with the claimant's other impairments and noting that the claimant offered no argument as to what limitations she would experience as a result of her obesity).

Page 12 of 14



Finally, with regard to Bufford's argument that the ALJ failed to consider whether she could work on a sustained basis, the court finds this argument does not warrant remand. The United States Court of Appeals for the Fourth Circuit has found that RFC determinations may contain implicit findings, including a finding of the ability to work on a regular and continuing basis. See, e.g., Hines, 453 F.3d at 563 ("In light of SSR 96-8p, [the ALJ's] conclusion [that Plaintiff could perform a range of sedentary work] implicitly contained a finding that Mr. Hines physically is able to work an eight hour day.").

Based on the foregoing, Bufford has failed to demonstrate that the ALJ's RFC determination is controlled by an error of law or unsupported by substantial evidence.

### RECOMMENDATION

The record does not show that Bufford was disabled as of her date last insured. She has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

January 5, 2011
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).